**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| R.R.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | : | **Civil Action No. 25-18296**<br><br>**OPINION** |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff R.R. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 78.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning March 16, 2020. A hearing was held before ALJ Laura Bernasconi (the "ALJ") on February 27, 2025 and the ALJ issued an unfavorable decision on March 27, 2025. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

In the decision of March 27, 2025, the ALJ found, at step two, that Plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy; bilateral knee and

foot arthrosis; spondylosis; obesity; cirrhosis secondary to fatty liver; depressive disorder; anxiety disorder and intellectual disorder. At step three, the ALJ found that Plaintiff's condition did not meet the requirements of any of the Listings of Impairments. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with specific non-exertional limitations, and that Plaintiff had no past relevant work. Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed, and the case remanded, for three reasons. Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence because: (1) the ALJ improperly disregarded portions of Dr. Cornejo's opinion, which were more restrictive than the RFC (Pl.'s Br. at 11-14), (2) the RFC limitation to understanding, remembering, and carrying out simple instructions was inconsistent with the jobs the ALJ found Plaintiff could perform (Id. at 14-15), and (3) the ALJ failed to sufficiently consider Plaintiff's subjective complaints (Id. at 16-19).

In reviewing the ALJ's determination, this Court must affirm the Commissioner's final decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Further, on appeal, Plaintiff carries twin burdens of proof. First, Plaintiff bears the burden at the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Second, Plaintiff bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). At the first four steps, this requires that Plaintiff

show that, but for the error, he might have proven his disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful.

Plaintiff argues first that the ALJ erred in formulating the RFC by finding Dr. Cornejo's opinion only partially persuasive and specifically, by not incorporating Dr. Cornejo's opinion that Plaintiff had "difficulty with bending and turning her neck and back" into the RFC. (Pl.'s Br. at 11) (quoting Tr. 794). Plaintiff also states that the ALJ gave "no reasoning why [s]he found this portion of Dr. Cornejo's opinion vague" and therefore failed to sufficiently analyze the opinion's supportability and consistency as required by the relevant regulations. (Id.).

The ALJ determined that Plaintiff retained the RFC to perform light work with the following limitations:

> she can never climb ladders, ropes and scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; can have occasional exposure to extreme cold, extreme heat, wetness and humidity; can have no exposure to hazards such as unprotected heights and moving machinery; can understand, remember and carry out simple instructions not on a production based system (i.e., no assembly line work or strict quotas).

(Tr. at 1862).

In formulating the RFC, an ALJ must articulate her determination of the persuasiveness of a medical provider's opinion, with a focus on its supportability and consistency. See 20 C.F.R. § 404.1520c(b), (b)(2) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . . The factors of supportability . . . and consistency. . . are the most important factors we consider . . . ."). An ALJ "need not reiterate the magic words 'support' or 'consistent' for each doctor," and may "weave [discussion of] supportability and consistency through her analysis of which doctors were more persuasive." Zaborowski v. Comm'r of Soc. Sec.,

115 F.4th 637, 639 (3d Cir. 2024). The ALJ complied with her regulatory requirement to explain her consideration of Dr. Cornejo's opinion, and the RFC is supported by substantial evidence.

The ALJ thoroughly reviewed the September 2023 exam by Dr. Cornejo, describing in detail the underlying results of that exam. (Tr. at 28). She then included, verbatim, Dr. Cornejo's opinion of Plaintiff's ability to function, including that Plaintiff would have "difficulty with bending and turning her neck and back." (Id. at 28) (quoting Id. at 794). Finally, the ALJ offered her view on Dr. Cornejo's assessment, as follows:

> The undersigned is partially persuaded by this opinion. Dr. Cornejo is a medical source who examined the claimant and had an opportunity to observe her, giving Dr. Cornejo special knowledge of the claimant, and insight into the extent of her impairments and ability to function. Accordingly, his examination findings support his opinion. Additionally, Dr. Cornejo's opinion is consistent with the overall record of evidence, including no more than moderate objective findings on examination and entirely conservative treatment. However, Dr. Cornejo's opinion regarding the claimant's functional limitations is vague. Indeed, Dr. Cornejo opines that the claimant would have "difficulty" with certain activities and would be able to perform other activities for a "reasonable amount of time." (Ex. 6F, 7) Additionally, he stated that the claimant "would more than likely be able to" perform other functions. *Id*. Dr. Cornejo did not define these terms and thus, the undersigned is unable to ascertain the extent of the claimant's functional limitations as opined by Dr. Cornejo and therefore this opinion is only partially persuasive.

(Id. at 29) (emphasis in original). The RFC reflected the ALJ's view that, while Dr. Cornejo's opinion was generally supported by his own examination findings and consistent with the record as a whole, parts of the opinion—specifically that Plaintiff would have "difficulty" with certain activities and could do certain activities like sitting for a "reasonable amount of time"—were too vague to be clearly implemented, rendering the opinion not entirely persuasive. In other words, the ALJ could not know precisely what Dr. Cornejo meant by "difficulty" and "reasonable amount

of time," so she could not adopt the opinion wholesale. The ALJ's assessment of Dr. Cornejo's statement about difficulty turning the neck appears entirely reasonable and, in fact, Plaintiff's brief does not argue otherwise: the ALJ's characterization, "vague," is appropriate, and Plaintiff has suggested no way for this Court to further ascertain the phrase's meaning so as to clarify the degree of functional impairment. Plaintiff argues that Dr. Cornejo's statement about the neck was "more restrictive" than the ALJ recognized, but has pointed to no evidence to support that conclusion. (Pl.'s Br. at 11.) The ALJ did exactly as she was required by explaining her reasoning. See Anderson v. Comm'r of Soc. Sec., 2022 WL 1635628, at *4 (3d Cir. May 24, 2022) (finding that, in "giving little weight" to a medical opinion, the ALJ's explanation that the opinion "was vague and failed to identify 'any specific work related functional limitations . . . suffice[d] under the substantial-evidence standard") (quotations omitted); Lucy A. T. v. O'Malley, 2024 WL 113776, at *13 (E.D.N.C. Jan. 9, 2024) ("vagueness is a proper ground for limiting the weight given medical source opinions.") (collecting cases).

Moreover, the ALJ's physical RFC formulation is directly supported by the assessment of state agency consultant, Dr. Fusman, at the reconsideration level. As summarized by the ALJ, Dr. Fusman opined that Plaintiff could:

> perform work at the light exertional level; stand and/or walk about six hours and sit about six hours total; never climb ladders, ropes and scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; must avoid even moderate exposure to extreme cold and heat; must avoid concentrated exposure to wetness, humidity and fumes and must avoid all exposure to hazards.

(Tr. at 28 (citing id.. at 91-92)). Likewise, the ALJ's mental RFC formulation is directly supported by the opinion of state agency examiner, Dr. Plasay. As the ALJ explained, Dr. Plasay opined that Plaintiff could "understand/remember and execute simple tasks; could sustain concentration,

persistence and pace for simple tasks (unskilled work); could socially interact adequately and could adapt to changes." (Id. at 28 (citing id. at 93-94)). The ALJ found these state agency examiners' opinions persuasive and the final RFC determination is nearly identical to these assessments. (See id. at 28). Accordingly, in the Court's view, these provide substantial evidence in support of the ALJ's RFC determination. See W.N. v. Comm'r of Soc. Sec., 2026 WL 836535, at *3 (D.N.J. Mar. 26, 2026) ("The ALJ carefully explained his finding that the RFC determination was supported by, *inter alia*, the opinions of the two agency reviewing physicians, and that constitutes substantial evidence in this case.").

Additionally, at step four, Plaintiff bears the burden of proving her disability, but Plaintiff's brief does not point to medical evidence of record which would support inclusion in the RFC of a material functional limitation to the ability to bend and turn her neck and back. (See Pl.'s Br. at 11-14). Further, Dr. Cornejo's evaluation itself did not make clear what the objective basis of this vague limitation in fact was. If anything, the medical evidence shows only a slight impairment of neck mobility. The records of chiropractic treatment which followed Plaintiff's 2024 car accident show steady improvement in Plaintiff's cervical range of motion—her ability to bend and turn her neck—such that by January of 2025, it was rated 85-90% of normal. (Tr. at 2300). This evidence provides additional support for the ALJ's determination that the medical record did not substantiate a limitation based on difficulty bending and turning the neck. In short, Plaintiff has failed to show that the ALJ erred, nor that any error was harmful under Shinseki.

Second, Plaintiff challenges the Commissioner's decision because the jobs which the ALJ found Plaintiff could do—Housekeeper, Merchandise Marker, and Mail Sorter—all require reasoning at level two (Housekeeper and Merchandise Marker) or three (Mail Sorter), according to the Dictionary of Occupational Tittles ("DOT"). As Plaintiff tells it, these jobs conflict with the

limitation of the RFC to "understand[ing], remember[ing] and carry[ing] out simple instructions" because that limitation correlates with the DOT's level one reasoning category, which is defined as requiring the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." U.S. Dep't of Labor, Dictionary of Occupational Titles app. C, § II (4th ed. rev. 1991) [https://occupationalinfo.org/appendxc_1.html].

Plaintiff's challenge fails because it does not grapple with Social Security Ruling ("SSR") 24-3p, which became effective as of January 6th, 2025. SSR 24-3p rescinded and replaced SSR 00-4p, which had required ALJs to inquire about and resolve conflicts between the testimony of the vocational expert ("VE") and information in the DOT. An ALJ is no longer required to inquire into and reconcile such a discrepancy. SSR 24-3p, 2024 WL 5256890, at *2. While SSR 24-3p still recognizes the DOT as a reliable source, it allows VEs to rely on other sources as long as they "explain the general approach of how they compared the DOT data to the data about estimates of job numbers in [other] classification system[s]." Id.

In this case, the vocational expert testified that an individual with the hypothetical RFC posed by the ALJ could do the three jobs of Housekeeper, Merchandise Marker, and Mail Sorter. (Tr. at 61-64). Under this new scheme, it is the role of the ALJ to "determine whether the evidence provided by a VS or VE is adequate to support a decision at step four or five." 2024 WL 5256890, 4. That is precisely what the ALJ did here in accepting the testimony of the VE. And the VE satisfied the requirement of 24-3p that he explain his methodology. As the ALJ noted:

> The vocational expert testified that the main statistical source he used was SkillTRAN Job Browser Pro, as it is the general acceptable source used by vocational consultants in forensic settings. The vocational expert's general approach for estimating jobs numbers is to look at the number of jobs for the specific Dictionary of

> Occupational Titles code based on the larger Standard Occupational Classification grouping code based on the incidence of jobs in the national economy by industry. The vocational expert explained that information is then supplemented by the OEWS (Occupational Employment and Wage Survey) statistics from the Bureau of Labor Statistics. The OEWS data is considered to be more valid and reliable because it is reported directly from employers.

(Tr. at 30). This testimony constitutes substantial evidence in support of the ALJ's finding at step five that there were jobs which existed in significant numbers in the economy which Plaintiff could perform. In short, Plaintiff's argument that the ALJ erred by not explaining the alleged discrepancy between the reasoning levels laid out in the DOT for the jobs identified by the vocational expert and the reasoning level inferred from the RFC is misplaced, because it is based on an SSR that has been replaced: under SSR 24-3p, the ALJ is not obliged to reconcile the kind of discrepancy that Plaintiff has alleged, and the ALJ's decision is supported by substantial evidence—the testimony of the VE.

Further, SSR 24-3p expects counsel to raise "any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." 2024 WL 5256890, 4. It appears Plaintiff's counsel did not do so during the hearing and now has no basis for challenging the ALJ's reliance at step five on the VE's testimony.

Finally, Plaintiff argues that the Commissioner's decision must be remanded because the ALJ did not give sufficient credence to Plaintiff's subjective complaints, "particularly complaints of dizziness and pain and her resulting inability to lift and sit, standing and walk for prolonged periods of time." (Pl.'s Br. at 16). The Court disagrees.

An ALJ must consider a claimant's subjective complaints, including pain and other symptoms, but is not required to accept them as fact. Instead, the ALJ must evaluate whether such

statements are consistent with the objective medical evidence and other evidence of record. See C.F.R. § 416.929; SSR 16-3p. On judicial review, the agency's factual findings are "'conclusive' if supported by 'substantial evidence.'" *See* Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)). Although an ALJ must carefully consider a claimant's subjective complaints, "the ALJ is not required to credit them," particularly where her statements are undermined by other evidence. See Chandler, 667 F.3d at 363

The ALJ began the RFC assessment by considering Plaintiff's subjective statements regarding her pain and dizziness, and her descriptions of the significant limitations in her ability to perform activities of daily living, lift more than five pounds, or sit, stand, or walk for prolonged periods. (Tr. at 24-25). The ALJ then looked to the medical records and determined that "[Plaintiff]'s statements about the intensity, persistence, and limiting effects of his symptoms [were] inconsistent with the objective evidence." (Id. at 25). The ALJ thoroughly explained her findings in a multi-page march through the relevant medical evidence. (Id. at 25-30). As just one example, the ALJ considered Plaintiff's complaints of "chronic low back pain, without radiation" and noted that "[i]maging of the lumbar spine in October 2023 revealed mild to moderate spondylosis (Ex.10F/17; *see also* Ex. 12F/68 and 404). She took Tylenol as needed, which she noted helped her pain (Ex. 7F/18)." (Tr. at 25). The ALJ's reasoning also included her review of the state agency examiners' opinions, discussed above, whose records and findings undercut Plaintiff's subjective complaints, and provide substantial evidence for the RFC as formulated. It also included Dr. Cornejo's opinion that Plaintiff would "be able to walk and stand for a reasonable amount of time without difficulty" and noted difficulty only with "heavy lifting," and not lighter lifting as required in "light work."

In short, the ALJ examined the medical records to look for corroboration of Plaintiff's self-

reports, but found the medical evidence of record insufficiently strong to support the furthest extent of Plaintiff's subjective complaints, and accordingly, was skeptical of adopting those complaints in their entirety. Despite Plaintiff's objections, this was an entirely appropriate exercise of the ALJ's discretion. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence"); Rock v. Comm'r of Soc. Sec., 2021 WL 2177512, at *5 (D.N.J. May 28, 2021) (explaining that the ALJ must consider the extent to which the claimant's "self-reported symptoms can reasonably be accepted as consistent with the objective medical and other evidence") (quoting 20 C.F.R. § 404.1529(a)).

Plaintiff has failed to persuade this Court that the ALJ erred in her decision, or that Plaintiff was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

s/ Stanley R Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: September 1st, 2026